IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Todd Russell Fries,<br><br>    Defendant. | No. cr-11-1751-TUC-CKJ (CRP)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

  In his Motion to Suppress, Defendant argues two searches conducted at his home violated his Fourth Amendment right as the searches were conducted without probable cause, the information was stale, and there was no nexus between the evidence of the crime charged and the area searched. (Doc. 99). Defendant requests the Court suppress the evidence found in Defendant's home during these searches.[1] (Doc. 99).

  ***Factual Summary for the Search***

  On May 12, 2011, Federal Bureau of Investigation ("FBI") agents applied to the Court for a search warrant for Defendant's personal residence and eight vehicles

---

[1] The Magistrate Judge notes that while Defendant requests suppression of evidence from both searches, Defendant's issue with the second search on May 27, 2011, is that the probable cause for that warrant derived from the alleged invalid first search. (Doc. 99 at 7). The Magistrate Judge will address the validity of the probable cause finding for the first search.

Defendant used in his cleaning business. (Docs. 117 at 5; 117-1 at 2). The application for the warrant was accompanied by a 22-page affidavit from FBI Special Agent Brian Nowak. (Doc. 117 at 17-38).

In the affidavit, Special Agent Nowak described an ongoing investigation of Defendant and three similar harassment incidents in which agents suspected Defendant was involved. Agent Nowak applied to federal court for the warrant because agents suspected they would find "instrumentalities and evidence" of Defendant violating 18 U.S.C. § 229(a), a prohibition against developing, producing, etc. chemical weapons. Agents believed Defendant, who owned a power washing business, retaliated against former customers who were dissatisfied with his work and failed to pay him in full. Three incidents caused agents to suspect Defendant of this activity. These incidents were described in the affidavit attached to the search warrant application.

The first incident occurred on November 1, 2008. (Doc. 117-1 at 24). Myles and Karen Levine were the victims of someone vandalizing their home. In the driveway leading up to their home, someone had strewn motor oil, paint, grease, feces, dead animals and foam packing peanuts. (*Id.*). Empty paint buckets were spread throughout the yard. (*Id.*). Graffiti was spray painted on the curb and the garage door. (*Id.* at 24-25). The graffiti included swastikas, male genitalia, female body and many ethnic slurs. (*Id.* at 25). Also discovered on the scene was a woman's wallet and driver's license belonging to a Kayln Hovey who stated her wallet was stolen in 2005, which was confirmed by agents. (*Id.*).

Prior to the first incident at the Levine home, in February 2008, the Levines had contracted with Defendant to resurface their driveway. (*Id.* at 18). Work did not go well and the Levines ultimately stopped payment on a check for $200.00 made payable to Defendant. (*Id.* 18-19). FBI agents analyzed evidence from the November 2008 incident and found Defendant's fingerprint on one of the buckets from the scene. (*Id.* at 25).

The second incident occurred on August 2, 2009. (*Id.* at 19). Myles and Karen Levine were again the victims of someone vandalizing their home. The vandalism

included the creation of a chemical cloud. The chemical cloud spread through the neighborhood. (*Id*.). The cloud was described in size as 100-150 yards long by 50-60 yards high and moving slowly through the neighborhood. (*Id*.). First responders to 911 emergency calls reported a strong chlorine smell and described their eyes, throat, lungs and face burning as they exited their vehicles. (*Id*.). Investigators traced the chemical cloud to two burning devices located on the Levine property, one in front of the garage door and another on their back patio. (*Id*.). A FBI expert believed the chemical cloud was created by mixing several components including chlorine and another unknown substance in plastic buckets. (*Id*. at 20-21).

Other facts from the August 2, 2009 incident were included in the affidavit. Spread throughout the Levine's driveway, sidewalk and walkway to their front door was a thick, viscous, slimy material that appeared to be a combination of paint, motor oil and foam peanuts. (*Id*. at 19). Dead animal carcasses including a rabbit, cat, coyote and numerous woodpeckers were strewn in front of the home. (*Id*. at 19-20). Graffiti including the words "Puta", "Puto" and drawing of male genitals and a swastika, were all spray painted on the Levine home. (*Id*. at 20). The front door, windows and garage door of the Levine home were all sealed shut with an expanding foam seal. (*Id*.). Also discovered at the scene was a day planner belonging to Michele Fuentes and Joaquin Navarette with a pre-printed check for $450 made payable to Karen Levine and the memo line stated "DBA Debbie's Cleaning Service refund customer unhappy." (*Id*. at 21). FBI agents later detected a latent fingerprint of Defendant on the check. (*Id*.). The owner of the day planner and check, Michele Fuentes, told agents her checkbook had been stolen earlier in 2009 and agents confirmed that bank account was closed. (*Id*.). Joaquin Navarette's identification was discovered at the Levine home and he also stated his identification was stolen. (*Id*. at 21-22).

The final incident occurred on April 28, 2011. (*Id*. at 25). Another former customer of Defendant was dissatisfied with work Defendant completed at the customer's home. (*Id*. at 25-26). The customer refused to pay Defendant and the customer discovered

in May 2010 that someone had tried to glue his garage door shut, among other vandalism. (*Id*. at 26). Then, on April 28, 2011, the customer discovered motor oil was poured over her driveway and a five gallon bucket filled with animal or human feces and a dead lizard was strewn on her driveway. (*Id*.). Also discovered at the scene was a black wallet and driver's license. (*Id*.). Agents interviewed the owner of the license and she stated she had lost her license in December 2010. (*Id*.).

In addition to descriptions of these three incidents, FBI agents also included statements from three former employees of Defendant's company. (*Id*. at 26-27). These employees told agents that Defendant carried a laptop with him at all times and used it frequently and that he also had a computer at his home that he used with frequency. (*Id*.). One employee told agents he/she observed Defendant stockpiling buckets, used oil, feces and dead animals at his home for future attacks. (*Id*. at 26). The employee also said Defendant used muriatic acid and paint thinner in his business. (*Id*.). The third employee told agents that Defendant would collect dead animals, including woodpeckers and that Defendant always had chlorine in his garage even though he did not use it in his business. (*Id*. at 27).

Magistrate Judge Estrada found probable cause for the warrant and authorized FBI agents to conduct the search. (*Id*. at 2). The scope of the search included a search of eight vehicles Defendant used for his business that were located at his residence, a search of his residence including all associated buildings, sheds, garages, and a comprehensive search of Defendant's computers located in the vehicles or his home. (*Id*. at 15, 27-34, 36).

After the initial search, FBI agents requested a second search on May 27, 2011. (Doc. 117-2 at 2). FBI agents requested that search because they inadvertently failed to seize a box of evidence from Defendant's home that they had identified during the initial search. (Doc. 117 at 7). Magistrate Judge Marshall authorized the second search. (Doc. 117-2 at 2). Agents did not find the missing box during the second search. (Doc. 117 at 7). Defendant seeks to suppress any evidence discovered in the second search, arguing the second search was based on the illegality of the first search. As the legality of both

- 4 -

searches derives from the affidavit submitted for the May 13, 2011 search, the Magistrate Judge will focus on that affidavit.

*Law*

In his Motion to Suppress, Defendant asks this Court to review Magistrate Estrada's finding of probable cause for the search warrant and find that the determination was error. "[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for ... concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal citation and quotation omitted). "[T]his 'substantial basis' standard of review embodied the great deference that should be shown by reviewing courts to magistrates' probable cause determinations." *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984).

The Court must determine whether there was a substantial basis for the issuing Magistrate Judge to conclude probable cause existed for the search of Defendant's property. "The validity of a search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir.1978). "An affidavit is sufficient if it establishes probable cause; that is, if the stated facts would reasonably allow a magistrate to believe that the evidence will be found in the stated location." *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir.1983).

Defendant argues, in part, there was not probable cause because the information agents had was stale. Primarily, Defendant contends he is alleged to have created a chemical weapon in August 2009 and agents did not request and receive a search warrant until May 2011. The mere lapse of a substantial amount of time is not controlling on the question of staleness of information in a search warrant affidavit; rather, staleness is evaluated in light of the particular facts of the case and the nature of criminal activity and property sought. *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir.1997). "When a police investigation relates to a continuing criminal business, rather than a completed act, courts

will permit greater lapses of time between dates of the activities described in the affidavit and the date of the warrant request." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir.1991).

Defendant also argues there was no nexus between the evidence of the crime charged and the residence to be searched. "When a magistrate judge issues a search warrant for a residence, he must find a 'reasonable nexus' between the contraband sought and the residence." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir.2002) (internal citation omitted). The magistrate judge "need only find that it would be reasonable to seek the evidence there." *Id.* (internal citation omitted).

*Analysis*

The issuing Magistrate Judge had a substantial basis for concluding there was probable cause that a search of Defendant's home and work vehicles would uncover evidence of the alleged crime. In its affidavit, FBI agents presented extensive evidence of three similar incidents. Allegedly, Defendant retaliated against former dissatisfied customers by vandalizing their homes. Defendant used a similar *modus operandi* in his alleged vandalism. All three incidents presented in the affidavit involved viscous liquid made of some combination of motor oil, grease and feces strewn across the targeted property and in two of the incidents it included foam peanuts. All involved plastic buckets. In the August 2, 2009 incident, the plastic buckets were filled with chemicals that created the chemical cloud. In each incident, dead animals were strewn across the targeted properties, including dead woodpeckers. In two of the incidents, graffiti, including ethnic slurs, were spray-painted on the property. At all three targeted homes, stolen items of identification were discovered and in two of the incidents, agents later discovered Defendant's fingerprint. All three of the targeted homes belonged to former customers of Defendant who were dissatisfied with his work and who refused to complete payment for the work Defendant did on their behalf.

Further supporting a finding of probable cause are the statements of Defendant's former employees. The statements included that one of the employees observed

Defendant stockpiling buckets, used oil, feces and dead animals at his home for future attacks. Another employee stated that Defendant would collect dead animals, including woodpeckers and that Defendant always had chlorine in his garage even though he did not use it in his business. (*Id*. at 27).

The Magistrate Judge recommends that the District Court find Magistrate Judge Estrada had a substantial basis for finding probable cause was present. This recommendation is not changed by Defendant's arguments that the information FBI agents had was stale or that there was no nexus between the evidence sought and the location searched.

The information in the affidavit was not stale. Defendant alleges the August 2, 2009 incident was a solitary event and that information about the other incidents was not relevant to a finding of probable cause. The Court disagrees. The three incidents and the statements of Defendant's former employees show a continuing pattern of alleged criminal behavior. Defendant allegedly sought retaliation against former dissatisfied customers by vandalizing their homes. Those incidents all involved similar *modus operandi* and Defendant's former employees gave statements to FBI agents that led the agents to believe Defendant would have evidence of the alleged crimes at his home and in his work vehicles. The employees' statements that Defendant stockpiled various items for his revenge schemes including but not limited to plastic buckets, motor oil, feces, dead animals, and chlorine all gave FBI agents reason to believe evidence of the incident in which Defendant allegedly created the chemical cloud would still be present at his home and/or in his work vehicles.

In his Motion, Defendant appears to argue, in part, that statements made by his former employees were stale because two of the three employees stopped working for him in 2008 and 2009, respectively. Defendant's argument is misplaced. The employees' statements are significant because they told agents that Defendant stockpiled and saved items that were potential evidence. Further, Defendant states the search warrant "relies upon" information obtained from the employees. It is true that the employees provided

further evidence to FBI agents that bolstered their belief that Defendant would have evidence of continuing criminal behavior at his home and/or in his work vehicles. The affidavit, however, also relies upon the similarity between the three incidents that are described in detail.

Finally, the Court finds there was a nexus between the evidence sought and the location searched. Defendant allegedly engaged in three incidents in which he vandalized the homes of former dissatisfied customers and created a chemical cloud during one of those incidents. His former employees told FBI agents that Defendant stockpiled and saved many of the items, including chlorine, that he had allegedly used in the vandalism. There was a substantial basis for concluding there was probable cause that a search of Defendant's home and work vehicles would uncover evidence of the alleged crime.

The Court also disagrees with Defendant's contention that the Government's request for the search of Defendant's computers was overbroad in its scope. Defendant allegedly engaged in retaliation against former customers. Defendant's former employees told FBI agents that Defendant carried a laptop with him at all times and used it frequently as well as the computer in his house. There was a substantial basis for concluding Defendant would have relevant records and/or searches related to his former customers and/or the topic of retaliation in his computers.

The Magistrate Judge also notes that even if the initial search warrant was invalid, the good faith exception applies. When evidence is obtained under a facially valid search warrant that is later found to be invalid that evidence is admissible if the executing officers acted in good faith and had "an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). There is no evidence that the agents misrepresented the evidence they presented in the affidavit. Nor is there any evidence that the issuing magistrate judge was not neutral. The agents acted in good faith when they executed the search warrant.

**Recommendation**

Based on the above, the Magistrate Judge recommends the District Court, after its

1 | independent review DENY Defendant's Motion to Suppress. (Doc. 99).

Given the September 18, 2012 trial date, any party may serve and file written objections within **five business days** of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. Any responses to objections must be filed within **five business days** of being served with a copy of the objections. **No replies will be permitted**. The parties are advised that any objections filed are to be identified with the following case number: **cr-11-1751-CKJ**.

Dated this 24th day of August, 2012.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 9 -