```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF ARIZONA

 3   ----------------------------)
                                 )
 4                               )
     UNITED STATES OF AMERICA,    )
 5              Plaintiff,        )  No. CA 13-10654 9th Circuit
                                 )
 6        vs.                    )  No. CR 11-01751 TUC-CKJ
                                 )
 7                               )     Tucson, Arizona
     TODD FRIES,                 )     December 6, 2013
 8              Defendant.       )
                                 )
 9   ----------------------------)

10                 TRANSCRIPT OF SENTENCING

11
          BEFORE THE HONORABLE CINDY K. JORGENSON
12               UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15

     For the Plaintiff:    By:  Beverly K. Anderson
16                              U.S. Attorney's Office
                                405 W. Congress St., Suite 4800
17                              Tucson, AZ   85701

18   For the Defendant:    By:  Richard C. Bock
                                100 N. Stone Ave., Suite 801
19                              Tucson, AZ   85701

20

21   Mary A. Riley, RMR, FCRR
     United States Court Reporter
22   U.S. District Court
     405 W. Congress St.
23   Tucson, AZ   85750

24

25        Proceedings produced by computer-aided transcription

                   UNITED STATES DISTRICT COURT
```

TRANSCRIPT OF PROCEEDINGS

1

2    (10:48 a.m.)

3            MS. ANDERSON:  Beverly Anderson for the United States.

4    Good morning.

5            THE COURT:  Good morning.

6            MR. BOCK:  Good morning, your Honor.  Richard Bock on

7    behalf of Mr. Fries, who's standing.  And he's in custody, and

8    he's prepared to be sentenced.

9            THE COURT:  Good morning.

10           And Mr. Bock, if you could approach the podium with

11   your client, please.

12           And this is the time set for sentencing in this case.

13           Mr. Bock, have you reviewed the presentence report

14   including the recommendation section and the addendum to the

15   report with your client?

16           MR. BOCK:  Yes.  I was at CCA yesterday with Mr. Fries,

17   and he reviewed not only that but he reviewed the —— my

18   objections to the presentence report, and the government's

19   position on that.

20           THE COURT:  All right, great.  And do you feel that

21   your client adequately understands those documents?

22           MR. BOCK:  I do, your Honor.

23           THE COURT:  And Mr. Fries, sir, have you been satisfied

24   with the services of your attorney in your case?

25           THE DEFENDANT:  Yes, your Honor, I have.

UNITED STATES DISTRICT COURT

1    THE COURT:  Has Mr. Bock been able to answer any
2  questions that you may have had about your case?

3    THE DEFENDANT:  Very knowledgeable, yes.

4    THE COURT:  And has he discussed the presentence report
5  including the recommendation section and the addendum to the
6  report prepared by Mr. Hoffman, who's here in court -- has he
7  discussed those documents with you?

8    THE DEFENDANT:  Yes, he has.

9    THE COURT:  Have you had a chance to look at those
10 documents yourself?

11   THE DEFENDANT:  Yes, I did.

12   THE COURT:  All right.  You were found guilty by the
13 jury of this case.  Let's see, that was back on August 13th of
14 2013.  This is Counts 3 and 4 of the original indictment.  The
15 case was severed or separated for trial, so we had two trials in
16 this case.  So this sentencing is dealing with Counts 3 and 4 of
17 the indictment.

18   Based on the jury verdict, it is the judgment of the
19 Court that you are guilty of the following charges:  Counts 3 and
20 4, which are counts of unlawful possession of unregistered
21 destructive devices in violation of Title 26, United States Code
22 Section, 5861(d) and 5871.  These are Class C felonies.

23   It is ordered the presentence report is made a part of
24 the record.  The Court finds that the report accurately describes
25 the offense conduct, and the Court adopts those facts.

UNITED STATES DISTRICT COURT

1    We do have some guideline relevant objections.
2  Obviously, one of the statutory factors is the advisory
3  guidelines, so the Court needs to calculate those -- calculate
4  the guidelines as part of sentencing today.
5    I don't think there's any dispute as to the base
6  offense level of 18.
7    MR. BOCK:  I --
8    THE COURT:  Well, there's -- I guess you think that he
9  should be sentenced under a completely different guideline.  So
10  why don't I -- Mr. Bock, I have reviewed your objections, which
11  is Document 370, the government's response, Document 372, and
12  then we obviously have the response from the probation department
13  in the addendum.  So why don't I let you articulate -- I mean, I
14  think you've adequately articulated your objections in your
15  written filing with the Court, but if you want to articulate more
16  your objections to the guidelines that are proposed by the
17  probation office, go ahead.
18    MR. BOCK:  Well, Judge, I think I broke it down, the --
19  the objections, into the areas that I've -- that I had difficulty
20  with.  I think there are some -- some sentencing questions here
21  that could be unique to -- to this situation.
22    First of all, the probation department through
23  Mr. Hoffman has recommended a period of 57 months to run
24  concurrent with the sentence -- concurrent with his 151 months.
25    Mr. Hoffman has found him to be a criminal history

UNITED STATES DISTRICT COURT

1   category II.  The base offense level was, I believe, a 22.  18

2   was for the -- the destructive devices, and there was a 4 level

3   increase for the number of -- of devices.

4         I've dealt with those in my -- in my objection.  I did

5   feel that this case was prosecuted as a -- as a tax case, and I

6   do understand the exception.  However, the cases that I've seen

7   have been clients that may have had a sawed off shotgun, or had

8   some type of weapon in their possession that was not registered

9   under the tax code, but yet they were felons -- were prohibited

10   possessors.  So I really do think that those situations -- that's

11   when that level 18 is applicable when there's an adjunct to the

12   person's status.

13         Mr. Fries was not a felon.  He had these devices.  And

14   the government called as a key witness Ms. Shely -- or Skely, or

15   Stely -- I don't remember her name, but she was the custodian of

16   records to show that these were not registered.  So that's why I

17   felt that the base level should be a 10, rather than an 18.

18         Now, as to his criminal history --

19         THE COURT:  But you agree that the guideline book

20   itself in the appendix --

21         MR. BOCK:  I -- yes.

22         THE COURT:  -- we need to look to 2K2.1 as the

23   guideline for this type of a conviction?

24         MR. BOCK:  Yeah, I -- and I said that in my --

25         THE COURT:  Here we go.  Here's the book.  Right?  I

1  mean, you agree?

2          MR. BOCK:  It's got a red cover.

3          THE COURT:  Okay, but you think that that's inaccurate,

4  or --

5          MR. BOCK:  That's my position.

6          THE COURT:  No, that's fine.  Okay.

7          MR. BOCK:  Now -- but the interesting questions are,

8  one, what's going to -- is his level I, or is his criminal

9  history II?  Now, he was in custody from the time of his

10  detention hearing.  And even at his detention hearing there was

11  testimony, and I put that in a footnote, as to these destructive

12  devices.

13          So I file a motion to sever, and the government --

14  here's what the government said in Document 90 regarding the

15  motion to sever Counts 3 and 4:  *In the present case the chemical*

16  *devices that are subject the of Count I are similar in character*

17  *to the explosive devices that are the subject of what are now*

18  *Counts 3 and 4.  Both were homemade destructive devices*

19  *manufactured by the defendant from simple everyday products.  The*

20  *chemical weapons that are the subject of Count I are incendiary*

21  *in nature, while the devices in Count 3 and 4 are explosive in*

22  *nature.  It is for these reason that the government joined the*

23  *explosive devices in Counts 3 and 4 with the chemical incendiary*

24  *device in Count I.  The defendant has failed to set forth any*

25  *evidence indicating he would be prejudiced by joinder of the*

*charges in Count I and those in Counts 3 and 4. For the forgoing*
*reasons the government respectfully requests that defendant*
*Fries' motion for severance be denied.* February 28th. Offered
by the Assistant U.S. Attorney that's been in charge of the case
from the get-go, Ms. Anderson.

 THE COURT: And they lost -- the Court was not
persuaded by that argument, right? The two cases were severed.

 MR. BOCK: But he was under the same case number, and
he was under indictment under that same case number, a
superseding indictment from August the 31st, until the date that
the Court went ahead and ordered a severance.

 THE COURT: I mean, I think the important thing is that
there not be double punishment. Here we have, really, two
separate cases -- even though they were indicted at the same
type, two separate cases that have been handled completely
independently, and there's no double counting in the sense --
sometimes under the guidelines relevant conduct is included for
the base offense level, even the person that hasn't been charged
or convicted of that relevant conduct. That's added in, and that
increases the base offense level. Here we don't have that. In
either case we're not looking at the conduct in the first case,
Counts 1 and 2, and tacking that onto this case, and we're not --
we didn't take any conduct from this case, Counts 3 and 4, and
tack it onto Counts 1 and 2 to increase that base offense level.
Even though the government asked that the case all be tried as

1  one, the Court denied that request and we've had two separate
2  trials, so --

3       MR. BOCK:  But my question is --
4       THE COURT:  Yes.
5       MR. BOCK:  -- why should he be deprived the time that
6  he's accumulated on this CR number?  Why should he be punished
7  for bringing a severance?  His due process entitles him to a fair
8  trial under the Fifth Amendment.  He brought a severance.
9       THE COURT:  Well, these are two separate incidents.
10 One happened in August of 2009, and one happened in May of 2011.
11 These are two separate incidents.  The government chose to indict
12 them all in one charging document.  We all know the charging
13 document's not evidence of anything.  It's a way to bring the
14 case, and this Court severed those two cases.  And so we have two
15 separate incidents, so technically the punishment can be separate
16 for each -- they're very -- in this Court's mind these were two
17 completely separate incidents.
18      MR. BOCK:  But --
19      THE COURT:  And so the punishment can be different
20 for -- or consecutive, or concurrent for these two separate
21 incidents.
22      But I understand your argument.  It was originally
23 indicted as one case.
24      MR. BOCK:  And also, if -- if these -- these counts can
25 be bundled together and grouped together, and that would be a

                    UNITED STATES DISTRICT COURT

1 range of up to 188 months.

2        THE COURT: If the Court -- like I said, the relevant

3 conduct -- if the Court had treated this case, these facts

4 relating to Counts 3 and 4 as relevant conduct and added that to

5 the base offense level in the other case, which I did not do, or

6 if the Court took the conduct from Counts 1 and 2 and added that

7 as relevant conduct to this case, then I think there would be a

8 concern about double punishment, or that sort of thing.

9        But I -- I understand your argument. You're saying

10 that he should be in a criminal history category I --

11        MR. BOCK: Right.

12        THE COURT: -- and not a II.

13        MR. BOCK: And that his time should run concurrent

14 under a 5G1.2 application rather than a 5G1.3 application. So we

15 agree with the assessment that it should be concurrent, but

16 again, Judge, we do feel very strongly that the time that he was

17 in custody on all of these counts, he should get some credit for.

18 And -- and the -- with all due respect to the Senior U.S.

19 Probation Officer, he -- he presumes that he wouldn't get any

20 credit for the destructive device conviction, and I -- there's no

21 case law that says anything. It's just a presumption. And I'm

22 concerned about that. He's been in custody now, Judge, since May

23 the 13th of 2011.

24        THE COURT: And he's receiving credit for Counts 1 and

25 2 -- all that time he's getting credit for on Counts 1 and 2.

1          But I understand your argument, so go ahead.

2          MR. BOCK:  We're hopeful that he gets some credit for

3     Counts 3 and 4.

4          THE COURT:  I know.  I understand that.

5          MR. BOCK:  And so he's provided you with a -- I

6     provided you with a number of letters.  Did you get those

7     letters?

8          THE COURT:  Yes, I did.  I read the numerous letters

9     that --

10          MR. BOCK:  And so, Judge, we would ask -- and you know,

11     you heard the facts of this case.  We would ask that you give him

12     a concurrent sentence, that you strongly consider that his

13     criminal history is I rather than II; and secondly, that even

14     though it is up to the BOP, that he be given credit for time that

15     he spent with Counts 3 and 4 under the same indictment for at

16     least that 300 days.  I'm hopeful that he would get credit for

17     all of that time.  He got a 151 month sentence.

18          He also would ask that he be re-designated back to

19     Safford.  He was in Safford, and that's where he wants --

20          THE COURT:  That's where he is housed now, right?

21          MR. BOCK:  Well, yes, that's where he was housed on

22     your other case --

23          THE COURT:  Right.

24          MR. BOCK:  -- so he would ask for that.

25          So for all those reasons, Judge, again, I think I've

                    UNITED STATES DISTRICT COURT

outlined my position in the —— my objections fairly well, and
I —— and I know the Court has reviewed it.  I know the Court is
familiar with Mr. Fries, obviously familiar with this case, and
again, I would —— I would ask the Court to consider my
recommendations.

THE COURT:  All right.  Thank you, Mr. Bock.

And Mr. Fries, I did read the letter that you wrote to
me.  Is there any statement that you would like to make on your
own behalf at this time?

THE DEFENDANT:  Yeah.  I wanted to thank you for taking
the time to read the letters.  I think they're —— they illustrate
the type of person I am with the amount of people that you've
read the letters from.  I have a lot of family support from my
mom, Jackie, Patty, Richard, his family.  There's a lot of —— a
lot of people that support me out —— and that have shown you
their support for me.

And had I have known about the explosive devices had
too much powder in them, I would have registered them had I known
that.  And I did have a very bad pack rat problem.
Unfortunately, it didn't turn out the way it should have.  You
know, ignorance is no exception to the law.  You know, you take
it I should have known that, but I had a bad problem.  It was on
my property.

Most of all, my —— my grandchildren —— you know, I miss
them immensely.  My mom was telling me the other day they were

UNITED STATES DISTRICT COURT

looking at a picture of me on the refrigerator, and the little
three year old said "Where's Bomby?"  And Bomby is Grandpa.  And
there was one that was a little bit older, Athea, said "Bomby's
in time out right now."

        And I hope I don't get any more time out from you, that
is, you know, out of place because I respectfully ask that -- you
know, I spent a lot of time, over 300 days incarcerated.  And
it's no picnic.  There's a lot that goes on.  There's a lot of
trouble that a man can get into, and I choose to do the right
path.  I help people with English.  I conduct classes.  As of
right now I'm an English teacher at CCA, also a rec porter.
Every time I've been employed by the BOP, I get responsible jobs.
For instance, at Safford I was the trash porter for the warden's
office, which is prestigious because I'm very vigilant and detail
oriented from the Marine Corps, and I take my job very seriously
regardless of what it is, and regardless of the minimal, menial
pay that it is.  It's probably -- well, I don't if it's good.
There's a lot of illegals that you see every day, but it's
sufficient.

        But I ask that you give me a fair sentence.  And you
know, this has been a learning experience, but I've made the best
of my -- my time as I could, and I think that speaks volumes
because so many people go to jail, and I think they become worse
people.  They actually get involved with dope, tattoos, stealing,
assaults, extortion.  I -- I -- I've seen a lot, and I choose not

1  to get involved with that.  I don't actually turn a blind eye,

2  but I don't get involved with it and I focus on positive things.

3  And if you don't -- if you don't focus on the positive things in

4  your life, you go down the toilet very quickly, and I don't want

5  my life to be down the toilet.  I want to enjoy my life.

6  I miss my mom.  I miss Jackie, and Dee.  And I just ask

7  that you take all this into consideration.  This is very

8  important to me.  This isn't some kind of game that -- you know,

9  it's -- it's very serious.

10  And the other thing is, this particular incident with

11  the firecrackers, with the explosives, with the pack rats there

12  was no ash cans, or violence intended with this.  This was purely

13  a tool, which as you saw in the letters I've had a pack rat

14  problem for -- since I've lived there.  And even Mr. Pack Rat, I

15  talked to one of his employees, I had lunch with him a while

16  back, and it's very difficult to get rid of them.

17  That being said, I just hope that you'll take all that

18  into consideration, and give me something fair that I can work

19  with, because I have spent a lot of time trouble free in the BOP

20  system, and in the -- in the CCA system.  No disciplines.  No

21  write-ups.  No trouble.  No going to the hole.  And I see people

22  every day -- a guy just got his neck sliced in the pod next to me

23  over a soup on a bet on a football game.  I used to play chess

24  with a guy that sliced the other guy's throat.  It's not fun.

25  But you make it -- you make your time what you make of it, and I

1  chose to be positive and stay away from the riffraff.  And I just
2  wanted to let you know that.

3          THE COURT:  All right.  Thank you, Mr. Fries, for your
4  remarks.

5          And is there any recommendation on behalf of the United
6  States?

7          MS. ANDERSON:  Yes, your Honor.  May I approach the
8  podium?

9          THE COURT:  Yes.  Why don't I have you step back,
10  Mr. Bock, with your client, and Ms. Anderson can come up to the
11  podium.

12          MS. ANDERSON:  First of all, I'd like to address the
13  objections.  I did file a response --

14          THE COURT:  Yes.

15          MS. ANDERSON:  -- but I -- and I felt that I thoroughly
16  set forth the government's position, but I'd like to go through
17  it just real briefly, your Honor.

18          First of all is the criminal history category
19  computation.  The defense asserts that it should be a criminal
20  history category I, and that the charges in Count 1 and 2 not be
21  considered as a prior sentence.

22          Now, the operative language that addresses this is
23  Section 4A1.2(a)(1) where it defines a prior sentence as *a
24  sentence previously imposed for conduct not part of the instant
25  offense.*  And the government agrees wholeheartedly with the

Court's analysis that these are completely different offenses.
They occurred on different -- different times.  The -- Count 1
occurred on August -- on August 2nd or 3rd.  I believe it was the
2nd.  And Count 2 occurred a couple of days later on August 4th.
So even those were different -- different offenses.  But clearly,
Counts 3 and 4 were a completely different set of facts that
occurred at -- almost two years later.  So clearly, the sentence
in Counts 1 and 2 can be considered a prior sentence.

Next is the base offense level, and defense counsel
throughout this whole trial has asserted that this is nothing
more than a tax case, and that's completely incorrect.  This is
not a tax case, and the guideline provision that was applied in
the presentence report is appropriate.

Next is the four level enhancement.  The government --
I'm sorry, the jury's verdict found beyond reasonable doubt that
the defendant was in possession of a total of 24 devices,
therefore the four level enhancement is -- is appropriate based
on the jury's verdict.

Next is credit for time served.  The defendant already
received credit for time served in the sentence that was imposed
in Counts 1 and 2, and the government believes it would be
improper to give the defendant again credit for the same amount
of time.  It would be unjust to give him credit one more time
when he's already received credit for that.

And finally, your Honor, consecutive versus concurrent,

1  and this is where the government feels the strongest.  As the

2  Court is aware, the Court sentenced the defendant to 151 months

3  previously.  That was the bottom of the range.  And now the

4  defendant is facing 57 to 71 months, and probation recommends 57

5  months to run concurrent.  And the government respectfully

6  disagrees with probation.  The government is requesting

7  consecutive time for numerous reasons.

8        Number one, the original sentence was the bottom of the

9  range, 151 months.  The government recommended something much --

10  much different than that, and the government felt that that was

11  -- that more than 151 months was appropriate based on the

12  defendant's conduct.

13        Next, the defendant has already received a benefit

14  because Count 2, which was a sentence of, I believe, 60 months,

15  was already run concurrent with Count 1.  So the defendant has

16  already received a benefit even though the facts in Count 2

17  occurred at a different time as well.

18        If -- if the defendant is sentenced to concurrent time,

19  your Honor, there would be no consequences for the 24 IED's that

20  the defendant possessed, that he -- that he manufactured, that he

21  possessed.  And those 24 IED's jeopardized and risked the safety

22  of people in the neighborhood, people that were living in the

23  house, the community, not only that but the first responders that

24  came into the house to do the search warrant, the ones that had

25  to remove those 24 devices and take them out to the bomb range

UNITED STATES DISTRICT COURT

1  and detonate them.

2          Now, in Counts I –- in Count 1 the defendant

3  jeopardized the community, the safety of the community in those

4  counts, but then again he did the same thing in Counts 3 and 4 on

5  a completely different time.

6          Now, the defendant asserts that these were just for

7  pack rats, but I would remind the Court what the testimony was,

8  that the defendant and these –- that these 24 devices had over 40

9  times the amount of flash powder that is allowable by law.  And

10  maybe one or two devices for a pack rat, but not 24 devices, your

11  Honor, that had shrapnel.  Three of them had the shrapnel that

12  was added, and that increases the lethality of those devices.

13  Not only that, but in the drawer along with the 24 devices was

14  the BB's, the glue, and everything else that the defendant needed

15  to put added shrapnel on the 21 devices that were not –- that did

16  not yet have the BB's affixed to them.

17          So based on everything, your Honor, the government

18  would recommend a consecutive sentence, again so that the

19  defendant faces consequences for his conduct of this very serious

20  offense that he committed by these 24 devices.

21          Thank you.

22          THE COURT:  Thank you, Ms. Anderson.

23          All right, and Mr. Bock, you can come back up to the

24  podium with your client.

25          Just for the record, I don't think anybody's disputing

1   this, but the Court declines to grant Mr. Fries acceptance of
2   responsibility for this incident, which would be the three levels
3   off.  Clearly, he chose to go to trial, and has not in any way
4   accepted responsibility for the conduct for which he was
5   convicted of.  So he's not getting that under the advisory
6   guideline scheme.

7           I am going to overrule the objections.  I agree with
8   the probation officer's analysis.  The four level enhancement for
9   the other -- there being a certain number of items involved in
10  this particular case.  I know as to one count the jury only had
11  to find that at least one item existed, but then as to the other
12  count there were several items.  So I think in totality in
13  looking at both counts of conviction and the jury's verdict, that
14  the four level enhancement is appropriate, and I'm adopting also
15  the -- the reasons contained in the presentence report.  And this
16  is -- I'm talking about 2K2.1(b)(1)(B).  And I'm also talking
17  about Count 3.  I believe the jury was told they only had to find
18  that one destructive device existed.  So -- but in Count 4 it was
19  clearly a verdict consistent with multiple devices.  So I think
20  that the evidence was presented to the jury -- if in fact there
21  needs to be a jury finding as to that plus four apart from that,
22  the Court finds by a preponderance of the evidence that the --
23  that this Court can make that finding that there were additional
24  items involved in this case which supports the four level
25  increase.

                    UNITED STATES DISTRICT COURT

1         The Court finds that the base offense level is correct
2 based on the advisory guidelines.
3         There's no objection to the plus two under paragraph
4 17.
5         The Court overrules the objection as to the criminal
6 history category II.  I think it is appropriately taken into
7 consideration under the advisory guidelines for the reasons
8 outlined in the presentence report and articulated here today by
9 the Court.
10         So I'm trying to see if there are any other -- I think
11 that covers all of the objections, which I am overruling.
12         So the advisory guideline range, then, is as calculated
13 in the presentence report, a 57 to 71 month range.
14         The Court has considered all of the statutory factors
15 of sentencing.  The guidelines is one of those factors.  The
16 Court in its discretion will follow the advisory guidelines.  I
17 think it provides for a fair and reasonable sentence considering
18 the conduct in this case.
19         I am considering the sentence that the Court has
20 previously imposed.  That was, obviously, a lengthy sentence for
21 very serious conduct.
22         I am considering all of the particular history and
23 characteristics of the defendant, all of the conduct involved in
24 this case.  There was extensive conduct involved in both cases,
25 which this Court is very familiar with having sat through these

UNITED STATES DISTRICT COURT

1  two trials, and obviously reading about various things in what's
2  been filed by the parties.

3          The Court notes all of the other statutory factors of
4  sentencing, and in fashioning a sentence the Court is aware of
5  all of those factors.

6          So I am -- I do think the advisory guidelines does
7  provide an appropriate range of sentence.  In my discretion in
8  considering all the statutory factors of sentencing I'm going to
9  run part of the sentence concurrently, and part of the sentence
10 consecutively.

11         I am considering the very lengthy sentence that the
12 Court previously imposed in determining this sentence.  On the
13 other hand, I further feel that there needs to be a separate
14 sanction for very separate conduct that was in this Court's mind
15 very serious conduct.  Obviously, in this Court's mind it doesn't
16 rise to the level in Counts 1 and 2, but this is still very
17 serious, disturbing conduct.

18         So the Court feels that at least a portion of the
19 sentence should run consecutively to address a separate
20 sentence -- a separate sanction for different conduct.

21         So in my discretion it is the order of the Court that
22 you be committed to the custody of the Bureau of Prisons for a
23 period of 60 months on this case.

24         I'm going to order that 20 months run consecutively,
25 and 40 months run concurrently with the sentence imposed in your

1    previous case.

2            Further, you'll need to pay a special assessment of

3    $100 on each count for a total amount of $200, which will be due

4    immediately.

5            The Court finds that you do not have the ability to pay

6    a fine.  It is ordered that the fine is waived.

7            Upon release from imprisonment you will be placed on

8    supervised release to this Court for a period of three years on

9    each count to run concurrently.  And I'm going to order that this

10   period of supervised release run concurrently with the supervised

11   release relating to Counts 1 and 2.

12           While on supervised release you shall comply with the

13   standard conditions of supervision adopted by this Court, and

14   you'll receive a written copy of those conditions.  And I'm going

15   to impose the same conditions that were imposed previously in

16   your previous case.  So those same conditions will apply.  So

17   you'll be on supervised release at the same time on all four

18   counts.

19           Further, Mr. Fries, I will recommend that you be housed

20   at the facility in Safford.  As you know, although the Bureau of

21   Prisons considers the Court's recommendation, the final decision

22   based on many different factors as to where you serve your

23   sentence will be made by Bureau of Prisons officials.

24           You have the right to appeal from the judgment and

25   sentence of the Court.  If you want to file an appeal, you must

1  do so in writing within 14 days of today's date or you would lose

2  the right to file an appeal.

3          If you could not afford a lawyer to represent you for

4  that proceeding, you could petition the Court to have counsel

5  appointed for you.  Otherwise, obviously, you can continue to

6  hire Mr. Bock to represent you on appeal.

7          So, Mr. Bock, is there anything further, then, at this

8  time?

9          MR. BOCK:  Is the record silent as to any pretrial

10  credits?  Is that going to be up to the Bureau of Prisons, or --

11          THE COURT:  Yes, the Bureau of Prisons will calculate

12  time credits, but I did enter the order relating to concurrent

13  and consecutive -- well, part of the sentence is concurrent or

14  consecutive.

15          MR. BOCK:  And I will be representing Mr. Fries on the

16  appeal.

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right, great.

19          So is there anything further, Ms. Anderson, from the

20  government's perspective?

21          MS. ANDERSON:  No, your Honor.

22          THE COURT:  All right, thank you, then.  We'll stand at

23  recess in this matter.

24          MR. BOCK:  May I have a minute with the client, judge?

25          THE COURT:  Yes, go ahead.

                    UNITED STATES DISTRICT COURT

1    (11:20 a.m.)

2                    C E R T I F I C A T E

3          I, Mary A. Riley, do hereby certify that I

4    stenographically reported the foregoing proceedings to the best

5    of my skill and ability, and that the same was transcribed by me

6    via computer-aided transcription, and that the foregoing pages of

7    typewritten matter are a true, correct and complete transcript of

8    all the proceedings had, as set forth in the title page hereto.

9          Dated this 2nd day of February, 2014.

10

11                                   s/ Mary A. Riley

12                              United States Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT